MORRELL PACKING Co. *et al.* *v.* BRANNING.

(Division A. Nov. 4, 1929. Suggestion of Error Overruled December 2, 1929.)

[124 So. 356. No. 27941.]

Amis, **Dunn** & **Snow,** of Meridian, for appellants.

Jacobson & Cameron, of Meridian, for appellants.

Reily & Parker, of Meridian, for appellee.

Argued orally by **A. B. Amis** and **Gabe Jacobson**, for appellant, and by **Marion W. Reily**, for appellee.

**Cook, J.**, delivered the opinion of the court.

The appellee, Mrs. Vivie Branning, instituted this suit in the circuit court of Lauderdale county against the Morrell Packing Company and A. M. Adams, seeking

to recover damages for personal injuries alleged to have been sustained in an automobile collision which occurred at the intersection of Twentieth street and Twenty-Fifth avenue in the city of Meridian, and from a judgment in favor of the appellee for twenty thousand dollars this appeal was prosecuted.

Twentieth street and Twenty-Fifth avenue, in the city of Meridian, cross each other at right angles, and the collision, which is the basis of this suit, occurred between an automobile driven by the appellee, which was traveling east on Twentieth street, and another one belonging to the Morrell Packing Company, and driven by the appellant, Adams, which was traveling north on Twenty-Fifth avenue.

The testimony as to the circumstances surrounding the collision, and the alleged negligence of the respective drivers of the automobiles, is sharply conflicting. The appellants contend, however, that a peremptory instruction requested by them should have been granted, for the reason that the appellee's testimony as to the facts and circumstances surrounding the collision, and the causes thereof, is so unreasonable as to be unbelievable, and therefore that it is insufficient to support a verdict in her favor.

After a very careful consideration of the evidence, which it would be of no value to here set forth, we are of the opinion that no error was committed in refusing this instruction, and in submitting to the jury the conflicting evidence.

The appellants also complained of an instruction granted to the appellee which, in effect, told the jury that if it found from the testimony that both the plaintiff and the defendant Adams were guilty of negligence which contributed to the collision, and the plaintiff was thereby injured, a verdict for the plaintiff should be returned.

The appellants contend that this instruction is erroneous, first, because, in the testimony offered by the respective parties, the appellee claimed that she was not negligent at all, and that the collision was caused solely by the negligence of the appellant Adams; while Adams claimed that he was not negligent, but that the collision was caused solely by the negligence of the appellee, and consequently there was no room for a finding by the jury that it was caused by the negligence of both of them; and, second, because the instruction did not direct the jury to diminish the damages awarded in proportion to the negligence attributable to the defendant Adams, in the event they found that the collision was the result of the concurring negligence of the appellee and Adams.

The fact that the driver of each of the automobiles involved in the collision testified that it was caused solely by the negligence of the other does not render an instruction based on our Comparative Negligence Statute (Hemingway's Code 1927, section 516) inapplicable or erroneous. The jury was not required to accept, in its entirety, the theory of either party, and it was its duty to consider all the testimony of the witnesses in the light of the physical facts and the circumstances shown, and to determine therefrom the negligence, if any, of the respective parties.

Neither was this instruction erroneous for the reason that it failed to inform the jury that it should diminish the damages in proportion to the negligence, if any, attributable to the appellee. The instruction merely informed the jury that if the negligence of the plaintiff and the defendant Adams contributed to the accident, a verdict should be returned for the plaintiff; and if the defendants desired to avail themselves of the statutory right to have the damages diminished in proportion to the negligence of the plaintiff, it was their duty to request the court to so instruct the jury; and having failed

to avail themselves of the right so to do, they cannot now complain.

In answer to certain apparently unobjectionable questions propounded to certain witnesses for the appellee, these witnesses gave testimony which tended to show that the appellant Morrell Packing Company was protected by liability insurance. Upon objection this testimony, in so far as reference was made to insurance, was excluded. The appellants thereupon also moved the court to withdraw the cause from the jury and enter a mistrial, and this motion was overruled.

The appellants now contend that the testimony in reference to insurance was inadmissible, and so prejudicial that the damage done thereby was not cured by the exclusion thereof; and in connection with this assignment, they also complain of certain questions asked a witness, the language of which, it is asserted, was intended to, and clearly did, convey the inference that a certain party who was present in the courtroom, and assisting in the trial, was representing an insurance company.

In view of the fact, however, that this cause must be reversed on another ground, and the errors, if any, in reference to insurance may be, and probably will be, avoided on another trial, we will not now decide whether there was reversible error in this regard.

There was testimony tending to establish the fact that, as a result of the collision, the appellee sustained an injury and nervous shock which culminated several weeks later in the premature birth of a child, which lived only a few hours. The appellants secured an instruction in the language following: "The court charges the jury that in no event in this suit can any damage whatever be allowed the plaintiff for the loss or death of her child testified to herein." And in the concluding argument counsel for the appellee used the following language: "Mr. Jacobson has told you that we cannot recover for

the death of the child. That is true. Should you find for the plaintiff you cannot award one cent for the death of the child. The court has so instructed you and the instructions of the court are sacred. We cannot recover for the value of the child's life expectancy, and this jury cannot award one cent because of the destruction of the child's life. This may seem hard. It may seem unjust, but it is the law, and the law is sacred, and you men must respect the instructions of the court in the rendering of your verdict. Nobody knows what the child may have been in after years had he lived to become a man. From the humble walks of life; from the loins of the toiler; from the humble woman, like this modest woman who has brought her cause to this courthouse, have come those who have largely made the history of the world. It is true that there is no way to estimate what this child may have accomplished in years to come, had it lived, but that is immaterial. Those who walk the lowly paths of life in this country have every door open to them, and yet, the instructions of the court must be respected. This child some day may have been a senator—"

At this point in the argument counsel for the appellant objected to counsel for the appellee discussing the death and loss of the child, but counsel continued as follows: "I have just told the jury that they cannot make any award for the destruction of the child's life. The gentlemen have not permitted me to complete my sentence, and I now say to the jury that they can make no award for the destruction of the child's life."

Upon further objection that counsel was arguing that the jury should consider the destruction of the child's life, counsel for the appellee continued: "I am doing nothing of the kind, if the court please. I am arguing the instructions of the court and expect to argue them in the future. I have already stated and state again that the jury can make no award for the death of the child." At

that point the court intervened with some general directions to the jury to follow the written instructions, and counsel continued as follows: "I do not want this taken out of my time. I am arguing instructions of the court and shall continue to do so. These men tell you that they want you to follow the instructions of the court and I tell you the same thing. I have told you that no award can be made by you for the death of the child. The court has so instructed you and you must obey that instruction regardless of what you may think of the law, and the fact that this child if it had lived, may have some day walked the ways of the mighty and been a blessing to his family and his country, makes no difference."

Over repeated objections, to which the court made no response, counsel continued at length on this line, as shown by the special bill of exceptions; this argument being interspersed with anecdotes and illustrations tending to ridicule counsel for the appellants for objecting to the argument.

We think this argument of counsel went so far beyond the bounds of legitimate argument as to require reversal of the judgment of the court below. It is true that counsel repeatedly—in fact, it seems entirely too often—impressed upon the jury that the instructions of the court were sacred, and that they should abide by the instructions to award no damages for the death and loss of the child, although they might consider such law to be harsh and unjust. The instruction was couched in plain and simple language, the meaning of which the jury could not mistake, and since the jury was not permitted to award the appellee any damages for the death and loss of the child, the fact that "nobody knows what the child may have been in after years had it lived to become a man," and that "from the humble walks of life; from the loins of the toiler; from the humble woman, like this modest woman who has brought her cause to this court-

house, have come those who have largely made the history of the world. It is true that there is no way to estimate what this child may have accomplished in years to come, had it lived, but that is immaterial. Those who walk the lowly paths of life in this country have every door open to them, and yet, the instructions of the court must be respected. This child may some day have been a senator"—was no concern of the jury, and we think it was highly prejudicial for counsel to continually impress upon the jury the great loss which the fond mother sustained by reason of the fact that her child was deprived of the opportunity to attain a high and exalted position among the distinguished men of the nation. We can conceive of no argument more calculated to arouse prejudice and passion in the minds of the jurors, or to induce them, whether consciously or unconsciously, to disregard the instruction upon that point, and we are of the opinion that the argument of counsel, when considered in its entirety, was so prejudicial as to require a reversal of the entire cause. The judgment of the court below will therefore be reversed, and the cause remanded.

Reversed and remanded.