405 So.2d 903 (1981)
Patricia C. Champagne AKIN
v.
Charles COWIE.
No. 52848.
Supreme Court of Mississippi.
November 11, 1981.
*904 Holleman & Krogstad, Michael B. Holleman, L. Kenneth Krogstad, Gulfport, for appellant.
Bryan, Nelson, Allen, Schroeder & Cobb, Billy W. Hood, Harry R. Allen, Gulfport, for appellee.
En Banc.
SUGG, Justice, for the Court:
The Plaintiff, Patricia Champagne Akin, recovered a judgment of $1944.00 against the Defendant, Charles Cowie, in the Circuit Court of the First Judicial District of Harrison County for injuries received in an automobile collision. On appeal Plaintiff assigns as error the granting of Defendant's comparative negligence instruction and the inadequacy of the verdict. The facts will be stated as each assignment of error is discussed.
Under the assignment of error pertaining to the comparative negligence instruction, Plaintiff argues Defendant was not entitled to a comparative negligence instruction and the instruction given by the court was not properly drawn.

WAS DEFENDANT ENTITLED TO A COMPARATIVE NEGLIGENCE INSTRUCTION?
On the afternoon of September 2, 1977, Plaintiff left her office in downtown Gulfport to return to her home on Klondyke Road. Plaintiff was proceeding north on Pineville Road south of the V-intersection where it is intersected by Klondyke Road, and saw Defendant's southbound car stopped on Pineville Road opposite the Golden Nugget Package Store. Defendant's turn signal indicated his intention to turn left across Pineville. Several cars were stopped in back of Defendant and some cars were ahead of Plaintiff in her lane of travel but were not immediately in front of Plaintiff. According to Plaintiff, Defendant suddenly turned in front of her as she passed in front of the package store and a collision resulted. There was a light rain falling; plaintiff had her windshield wipers on; she estimated her speed at about 25 miles per hour at the time of impact, and estimated her speed was about 25 miles per hour after she turned on Pineville Road to proceed north. Plaintiff was asked if she slowed her speed below 25 miles per hour when she reached the point where Defendant's car was. She responded, "No, I had no reason to. I didn't expect him to pull out in front of me."
Defendant testified that he was traveling south on Pineville Road and was going to the Golden Nugget Package Store which is located on the Pineville Road where it intersects with Klondyke Road. His windshield wipers were on, and as he approached the area where the package liquor store was, he came to a stop and turned on his left turn signal. He remained stopped until a car, which was approaching in the northbound lane, passed and then started to turn to the left. At that time Plaintiff's automobile was about 180 feet south of Defendant. Defendant testified that Plaintiff's car was at a canal, which crosses Pineville Road, when he started his turn; that he measured the distance from the canal to the center of the parking lot into which he was turning.
Plaintiff argues that Jones v. Craft, 218 So.2d 727 (Miss. 1969) is almost identical to this case, thereby requiring a reversal. In Jones, Plaintiff was driving east on Highway 28 which is a paved highway having two lanes of traffic, one for eastbound traffic and one for westbound traffic. The accident occurred in front of Sullivan's store which was located on the south side of the highway. The area between the store and highway was graveled and a gravel road ran south along the west side of Sullivan's store. Wilson, who was driving west, arrived in front of Sullivan's store about *905 the time Plaintiff approached from the west. Wilson stopped his pickup truck in the westbound lane to allow Plaintiff to pass before he turned south on the gravel road. Plaintiff slowed his vehicle to about 55 miles per hour as he approached the store and blew his horn as he passed the Wilson vehicle. Defendant arrived from the cast about this time and undertook to turn to his left so as to stop in front of Sullivan's store. Defendant turned left directly across Plaintiff's lane of traffic and the two vehicles collided.
The trial court peremptorily instructed the jury to find for the Plaintiff on the question of liability and there was no cross-appeal by Defendant questioning the propriety of this instruction. Plaintiff assigned as error the granting of two instructions requested by Defendant instructing the jury to consider the contributory negligence of plaintiff, if any, in awarding damages. The court noted that Plaintiff testified that he reduced his speed to about 55 miles per hour before reaching the Sullivan store, in an area where the speed limit was 65 miles per hour. The only proof that Plaintiff was guilty of excessive speed was the testimony of Defendant that he did not see Plaintiff's automobile until, "It was right ready to hit me." When asked if he observed the speed of Plaintiff's vehicle, he answered, "Well, it was coming like lightning."
The Court held that the testimony of Defendant was no more than a bare scintilla that Plaintiff was driving at an excessive speed; therefore, no instruction on contributory negligence should have been given because the record failed to reveal any substantial evidence of any negligence on the part of Plaintiff.
In the case at bar, Plaintiff admitted seeing Defendant stopped with his left turn signal on some distance prior to the impact, and that she did not reduce her speed from 25 miles per hour because, "I had no reason to. I didn't expect him to pull out in front of me." Moreover, Defendant testified that he started his turn across Pineville Road when Plaintiff was approximately 180 feet south of the point of the collision. Jones was correctly decided on the facts in that case, but the case at bar presents an entirely different factual situation.
Plaintiff's theory of Defendant's negligence, set forth in her instructions, was that the Defendant turned his vehicle into the lane occupied by her at a time when she was so close as to constitute an immediate hazard. Defendant's theory of Plaintiff's negligence set forth in his instructions was that when he turned his vehicle to cross the northbound lane of Pineville Road, the Plaintiff was not close enough to constitute an immediate hazard and Plaintiff negligently failed to yield the right of way.
A policeman who investigated the collision made a sketch showing that Defendant's vehicle was located partially in the package store parking lot and partially in the lane of traffic after the collision, corroborating Defendant's testimony that his car was about two feet into the parking lot when the collision occurred.
Plaintiff and Defendant were the only two witnesses who testified about the collision. Plaintiff claimed that Defendant suddenly turned in front of her when she was so close that she could not stop. Defendant denied this, and, claimed that he started his turn when Plaintiff's vehicle was approximately 180 feet from him and, in his opinion, he had sufficient time to make the turn safely across the road. Under these disputed facts, we hold that the Defendant was entitled to have the question of whether the Plaintiff negligently failed to yield the right-of-way presented to the jury.

WAS DEFENDANT'S CONTRIBUTORY NEGLIGENCE INSTRUCTION PROPER?
The following instructions were given by the court:
JURY INSTRUCTION NO. P-2
The Court instructs the Jury that the driver of a vehicle waiting at an intersection, intending to turn to the left, shall yield the right of way to any vehicle *906 approaching from the opposite direction which is within the intersection, or so close thereto as to constitute an immediate hazard. If you believe from the evidence, if any, that at the time Charles Cowie turned his vehicle into the lane occupied by Patricia C. Champagne Akin at a time the Plaintiff was so close so as to constitute an immediate hazard, then Charles Cowie was negligent. You are further instructed that if you believe such negligence, if any, proximately caused or proximately contributed to any injuries or damages sustained by Patricia C. Champagne Akin, then it shall be your sworn duty to return a verdict for Patricia C. Champagne Akin.
JURY INSTRUCTION NO. P-3
The Court instructs the jury that the driver of a motor vehicle shall not turn his vehicle in the path of an oncoming vehicle unless it is safe to do so, and further, that the turn could be completed without endangering the driver of the oncoming vehicle.
If you believe from the evidence that Charles Cowie turned his vehicle into the path of the vehicle driven by Patricia C. Champagne Akin at a time when it was not safe to do so, then Charles Cowie was negligent. You are further instructed that if you believe such negligence, if any, proximately caused or proximately contributed to any injuries or damages sustained by Patricia C. Champagne Akin, then it shall be your sworn duty to return a verdict for Patricia C. Champagne Akin.
INSTRUCTION NO. D-7
The Court instructs the jury that if you find from a preponderance of the evidence in this case that the Defendant, Charles Cowie, immediately before the collision in question, gave a signal of his intention to turn left across the northbound traffic of Klondyke Road and in the exercise of reasonable care, began traveling left across the northbound lane of Klondyke Road into a private parking area, when the Plaintiff, Patricia Champagne Akin, approaching from the south, was not so close as to constitute an immediate hazard, then the Defendant Cowie held the right of way over the Plaintiff Akin, and in that event, if you further find from a preponderance of the evidence that the Plaintiff Akin negligently failed to yield the right of way to the Defendant Cowie and that such negligence, if any, was the sole proximate cause of the collision in question, it would be your sworn duty to return a verdict for the Defendant, Charles Cowie.
INSTRUCTION NO. D-8
The Court instructs the jury that before you can return a verdict for the Plaintiff, she must prove by a preponderance of the evidence that the Defendant was guilty of negligence which proximately contributed to her injury, if any, and even then, if you further believe from the evidence that the Plaintiff was herself guilty of negligence, if any, in the operation of her vehicle which proximately contributed to any injury, the Court instructs you that you must, in this event, reduce the damages from any injury to the Plaintiff in proportion to the negligence contributed by the Plaintiff which resulted in her injury, if any.
Defendant's Instruction D-8 did not define the acts which would constitute contributory negligence; however, even though failure to do so is error, it is harmless error where another instruction correctly informs the jury what facts constitute negligence. In Trainer v. Gibson, 360 So.2d 1226 at 1228 (Miss. 1978), we held:
We have stated on several occasions that an instruction charging negligence or contributory negligence must define those acts which would constitute such. Jones v. Craft, 218 So.2d 727 (Miss. 1969); Rayborn v. Freeman, 209 So.2d 193 (Miss. 1968); Gore v. Patrick, 246 Miss. 715, 150 So.2d 169 (1963).
We have also held that even though failure to do so is error, it is harmless *907 error where another instruction correctly informs the jury what facts constitute negligence. Gore v. Patrick, supra.

Thus, if another instruction correctly defines negligence, the error would not ordinarily be reversible.
Defendant's Instruction D-7 correctly informed the jury what acts of the Plaintiff could constitute negligence, and under the familiar rule that all instructions must be considered together,[1] we hold it was not reversible error to give Instruction D-8.
In Jones v. Craft, 218 So.2d 727 (Miss. 1969) a contributory negligence instruction, similar to D-8, in this case was condemned. However, the court pointed out that no other instruction cured the error. In Jones, a peremptory instruction was given for the Plaintiff and the record does not contain any instruction on negligence.
In Morrell Packing Co. v. Branning, 155 Miss. 376, 124 So. 356 (1929) appellant argued that an instruction was erroneous because, in the testimony offered by the respective parties, the Appellee claimed that she was not negligent at all, and the collision was caused solely by the negligence of the Appellant, Adams, while Adams claimed he was not negligent, but the collision was caused solely by the negligence of Appellee; consequently, there was no room for a finding by the jury that it was caused by the negligence of both of them. In disposing of this argument the Court held:
The fact that the driver of each of the automobiles involved in the collision testified that it was caused solely by the negligence of the other does not render an instruction based on our Comparative Negligence Statute (Hemingway's Code 1927, § 516) inapplicable or erroneous. The jury was not required to accept, in its entirety, the theory of either party, and it was its duty to consider all the testimony of the witnesses in the light of the physical facts and the circumstances shown, and to determine therefrom the negligence, if any, of the respective parties. (155 Miss. at 382, 124 So. at 357)
See also, Ferguson v. Denton, 239 Miss. 591, 124 So.2d 279, 280 (1960).
In this case, as in Morrell Packing Co., the jury was not required to accept, in its entirety, the theory of either party, and it was its duty to consider all the testimony and to determine therefrom the negligence, if any, of the respective parties.
We hold that the Instruction D-8 was not proper, but giving the instruction was harmless error because D-7 properly defined Defendant's theory of the negligence of the Plaintiff; to-wit, failure to yield the right-of-way.

WAS THE VERDICT OF THE JURY CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE?
The collision occurred on September 2, 1977, and Plaintiff testified that she was thrown up over the steering wheel, hit the top of her head on the windshield and bruised and cut her left knee. Plaintiff was treated at the emergency room of the Memorial Hospital at Gulfport and the complaints given by her to the emergency room physician were severe headache and abrasions to her knee. The X-rays were normal and Plaintiff was released on the same day with no complaint of back injury being made at that time. The total medical expense incurred in this treatment was $144.
Plaintiff stayed at home for the next three or four days suffering with headaches and pain in her knee. When the pain started subsiding, she noticed a low back pain that radiated into the right buttock. She did not seek any medical help for the back pain at that time; however, the pain became gradually worse over the next few weeks and she made an appointment with her family physician but had to cancel the appointment because of a conflict in her schedule. Sometime during the first or second week in December, Plaintiff noticed the pain was radiating down into her right leg and made another appointment with her family physician for January 5, 1978.
*908 Plaintiff was not able to fill this appointment because on January 3, 1978, as she was getting dressed for work, she leaned over to open the top drawer of her dresser, heard a pop in her back, could not straighten up, could not move, and had her daughter call her former husband to come and assist her. By the time he arrived she was able to straighten up and take some short steps. Her husband called Dr. Corban, an orthopedic surgeon, and she was taken to his office. Dr. Corban admitted her to the Gulfport Memorial Hospital where she remained for a period of three weeks. She was placed in traction at the hospital and during the last day or two of her hospital confinement was allowed to walk. She stayed with her mother for the next three weeks and then returned home for another three weeks before returning to her law office.
Plaintiff was examined by Dr. Richard Buckley, a neurosurgeon, on March 30, 1978, and this examination suggested to the doctor that she suffered a mechanical instability of her back. Dr. Buckley requested that Plaintiff have additional X-rays to confirm the possible mechanical instability and return in a few weeks for a follow-up visit.
Plaintiff did not return to see Dr. Buckley until March, 1979. His examination at that time revealed that Plaintiff suffered from spondylolisthesis, a congenital condition that probably developed during her late teens. Both doctors testified that Plaintiff gave a medical history of back pain following the accident which continued until the acute episode of January 3, 1978. The acute episode was brought on by the activity Plaintiff was engaged in at that time, namely, bending over to open a dresser drawer. Dr. Buckley stated that the automobile accident did not cause Plaintiff's spondylolisthesis. Both doctors were of the opinion that there was a causal relation between the automobile collision and the symptoms Plaintiff was having in 1978 and 1979 based largely on the medical history given by Plaintiff, after the acute episode of January, 1978, of back pain following the collision. Dr. Buckley testified that there was a marked improvement in Plaintiff's condition from her first visit in 1978 and her last visit in 1979.
Dr. Buckley recommended that Plaintiff have an operation on her back because of the symptoms she was having. The operation would entail approximately two weeks hospitalization and Plaintiff would probably not be able to go back to work for a period of three to four months. Dr. Buckley estimated Plaintiff could probably count on a period of six months to a year after surgery before she could resume a normal caseload or normal activity. He estimated that a two week hospitalization for the operation would cost between $3,000 and $4,000 and the surgical fee would be approximately $2,000. Plaintiff had not had the operation at the time of trial.
Plaintiff's medical expenses following the automobile collision were $144 and her total medical expenses following the acute episode of January 3, 1978, were $2,790.01, which included expenses of hospitalization and examinations by Dr. Corban and Dr. Buckley. Plaintiff argues that the verdict of the jury is against the overwhelming weight of the evidence because the verdict of $1,944 is less than her total medical expenses which have been paid and which she will incur in the future. Plaintiff thus attributes all of her back problem and medical expenses to the automobile collision of September 2, 1977, and none to the accident which occurred when she bent over to open a dresser drawer on January 3, 1978.
The doctors who testified related her current symptoms to the automobile collision largely on the testimony of the Plaintiff that she suffered pain after the collision before she hurt her back in 1978. There is no evidence in the record that Plaintiff complained to anyone about back pain during this interval.
The jury had before it the question of comparative negligence of the Plaintiff and had the right to take Plaintiff's negligence into account in assessing damages. As the Court stated in Morrell Packing Co., supra, the jury was not required to accept in its entirety the theory of either party *909 and it was its duty to consider all the testimony of the witnesses and the physical facts and determine therefrom the negligence, if any, of the respective parties. The right to take comparative negligence into account may justify an otherwise inadequate verdict. Matheny v. Illinois Central RR. Co., 235 Miss. 173, 108 So.2d 589 (1959). Moreover, the jury had the right to determine whether Plaintiff's symptoms with her back were caused by the acute episode of January 3, 1978, rather than the collision. We therefore affirm.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and WALKER and BROOM, JJ., concur.
BOWLING, HAWKINS and LEE, JJ., dissent.
BOWLING, Justice, dissenting:
In my opinion the granting of Defendant's Instruction D-8 was reversible error; for otherwise we shall be doing violence to the prior decisions of this Court without specifically overruling them.
The majority opinion admits that Instruction D-8 is error but states that this admitted error is harmless primarily because of defendant's Instruction No. 7 and Plaintiff's Instructions Numbers 2 and 3, all of which are set out in the majority opinion.
It cannot be disputed that we have held that the granting to a defendant of a contributory negligence instruction should include instructions to the jury as to what guidelines it should follow in determining whether or not the plaintiff was guilty of contributory negligence and thereby requiring the jury to diminish the plaintiff's damages.
With deference, I cannot see how the majority can hold that Instructions P-2, P-3 and D-7, as set out in the majority opinion, cure the admitted error in Instruction D-8. The two instructions granted the plaintiff clearly refer solely and exclusively to alleged negligence of the defendant and have nothing whatever to do with any jury guidelines as to possible negligence of the plaintiff.
This brings us to the real reasoning of the majority opinion stating that Instruction D-7 renders erroneous Instruction D-8 harmless. The sole and only point of law about which the jury was instructed in D-7 was that if the defendant did certain things under the applicable statute, he had the right of way. The instruction then goes on to say that if he was not given this right of way, he was entitled to a verdict. In other words, the instruction involved only the question as to whether or not the defendant was entitled to a verdict and in no way includes any guidelines regarding any specific acts of negligence on the part of the plaintiff that would reduce a verdict for the plaintiff.
Neither Instruction D-8 nor other instructions gave any guidelines whatever to the jury regarding any alleged action of the plaintiff such as speed, look-out, control, etc. It merely turns the jury loose to grope in the dark about any specific acts of contributory negligence, as required by the prior cases of this Court cited in the majority opinion.
The above conclusion is necessary even under the language of Instruction D-7 where it states that "if you further find from a preponderance of the evidence that the plaintiff Akin negligently failed to yield the right of way... ." This instruction itself leaves the jury to blindly try to determine what the word "negligently" means. At the risk of repetition, the instruction then goes solely to the rights of the defendant exclusively under the contention that he was entitled to a verdict and the plaintiff entitled to nothing.
There is one question that can be asked which clarifies what I am saying; that is, if the plaintiff was guilty solely of negligence in "failing to yield the right of way" and the defendant was entitled to a verdict under Instruction D-7, which was the sole request, then why is contributory negligence involved at all under D-7?
In laymen's language, the defendant cannot have his cake and eat it too. He cannot *910 contend that he is entitled to a verdict simply because he had the right of way and then confuse the jury by stating, "Oh, well, if that is not correct then I am entitled to a reduction of damage because of plaintiff's contributory negligence." The question arises, which is wholly and completely absent from the instruction: "what was plaintiff's contributory negligence?" It could not be failing to yield the right of way as Defendant's D-7 under the alleged facts in that instruction, give him the right of way. In other words, if the plaintiff was guilty of contributory negligence, it could not be "failing to yield the right of way." This would have been the "sole" cause and no contributory negligence would be involved. It is inescapable, therefore, that if the jury were permitted to delve into the issue of plaintiff's contributory negligence, such as control, speed, look-out, etc., they received absolutely no instruction and under our prior decisions Instruction D-8 is clearly reversible error.
LEE and HAWKINS, JJ., join in this dissent.
HAWKINS, Justice, dissenting:
I respectfully dissent. In my view giving the contributory negligence instruction over the objection of the plaintiff constituted reversible error.
Under the facts of this case there was just one issue presented for the jury to decide: whether it was the plaintiff or the defendant who had the right of way for the east side of Pineville Road at the moment of the collision. One had it, the other did not. As set forth in the majority opinion the jury was clearly and unmistakably instructed on this precise issue.
Giving the contributory negligence instruction in this case makes the same sense as authorizing a jury to find there are two fathers in a paternity suit.
BOWLING, J., joins in this opinion.
NOTES
[1] Instruction C.01 states in part, "You are not to single out one instruction alone as stating the law, but you must consider these instructions as a whole."