542 So.2d 884 (1989)
Tan Minh PHAM
v.
Andrew W. WELTER.
No. 58129.
Supreme Court of Mississippi.
February 27, 1989.
Rehearing Granted in Part, Denied in Part and Opinion Modified May 3, 1989.
*885 William L. McDonough, Jr., Bryant, Stennis & Colingo, Gulfport, for appellant.
Floyd G. Hewitt, Jr., Peter C. Abide, Compton, Crowell & Hewitt, Russell S. Gill, Biloxi, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and ZUCCARO, JJ.
ZUCCARO, Justice, for the Court:
Andrew Welter (Welter) filed suit against Thua Van Tran and Tan Minh Pham (Pham) for his damages in connection with an automobile accident between his vehicle and a vehicle which Pham was driving owned by Thua Van Tran. Pham counter-claimed for his damages and Thua Van Tran counter-claimed for the damages to his automobile.
In the court below, the jury returned the following verdict:
We, the jury, find plaintiff/driver Welter negligent by 40% and the defendant/driver Pham negligent by 60%; we find that the total damage suffered by Welter to be $40,000, the total damages suffered by defendant/driver Pham to be $30,000 and the total damages suffered by the defendant/owner Tran to be $0.
Upon entry of the judgment, Thu Van Tran and Pham each filed a motion for additur, or in the alternative, a new trial on the issue of their respective damages. Tran based his motion on the uncontradicted testimony as to the value of his destroyed car, while Pham asserted his undisputed damages including pain and suffering. Pham also moved for a remittitur or in the alternative a new trial as to the $40,000 in damages awarded to Welter and asserted as his grounds therefor that the jury verdict was against the overwhelming weight of the evidence and was so grossly excessive as to evidence bias and prejudice on the part of the jury. Upon hearing the motions, the trial court ordered an additur of $2,500 for Thu Van Tran for damages to his vehicle reduced by 60% for Pham's contributory negligence, but overruled both Pham's motions (remittitur as to Welter's damages and additur as to his damages). From that ruling Pham appeals and Welter cross-appeals and the following assignments of error are alleged:

*886 AS TO PHAM'S APPEAL
I. The Trial Court Erred in Overruling Appellant's Motion for Additur or in the Alternative for a New Trial as to Damages.
II. The Trial Court Erred in Overruling Appellant's Motion for Remittitur or in the Alternative for a New Trial as to Appellee's Damages.
AS TO WELTER'S CROSS APPEAL
III. The Lower Court Erred in Granting a Comparative Negligence Instruction.
IV. The Verdict of the Jury was Contrary to the Overwhelming Weight of the Evidence.
V. The Lower Court Erred in Refusing to Grant Jury Instructions P-9, P-10 and P-11 Concerning the Agency of Pham.
VI-A.[1] The Trial Court Judge Erred in Overruling the Motion to Correct Judgment.
VI-B.[1] The Trial Court Correctly Overruled the Motion to Correct Judgment
Finding error, we grant an additur of $30,000 to Pham or, in the alternative, a new trial on the sole issue of damages. We also address the issues raised in assignments III, and VI-A[1] and VI-B.[1]

FACTS
On July 16, 1984, on a rainy afternoon, Andrew Welter and Tan Minh Pham were involved in a head-on collision on Howard Avenue in Biloxi, Mississippi. The accident occurred near the intersection of Howard and Claiborne Street. The versions of how the accident occurred from plaintiff's viewpoint and testimony and from defendant's testimony and viewpoint are poles and light years apart.
It is Welter's contention that he and Larry Gilbert, a coworker, were travelling east in a 1966 station wagon on Howard Avenue in Biloxi, that while beginning to negotiate the second curve of an "S" curve on Howard Avenue, a 1978 Cutlass driven by Pham in a westerly direction careened across the center line and collided head-on with Welter's vehicle in the east-bound lane against the curb. According to Welter, the Cutlass, which was owned by Pham's employer, had balding tires. Welter, Gilbert and Randall Broussard, a disinterested party travelling behind Welter, attested to this version of how the collision occurred. These facts, as pointed out by Welter, were corroborated by Biloxi Police officers James Beese and Terry Tirrell, both of whom were on the scene of the accident soon after the collision occurred. Officers Beese and Tirrell testified that the debris was situated in the east-bound lane, and Tirrell observed skid marks going from the west-bound lane of Howard into the east-bound lane. Photographic evidence established that the vehicles hit directly head-on.
In a version totally contrary to Welter's story, Pham asserts that he was travelling west on Howard when he saw a station wagon run a stop sign on Claiborne Street. Pham stated that the station wagon hit him on the right side and "pulled" his car over into the east-bound lane. Mui No, a Vietnamese lady from Chicago, testified that she was standing in front of her house when she saw a station wagon go through the stop sign and collide with Pham. Barbara Adams of Pensacola, Florida, also testified on behalf of Pham and she, too, testified that she saw a station wagon go through the stop sign and collide with Pham; however, on cross-examination she admitted that she was not wearing glasses as required, and that she had been under anti-psychotic medication at the time of the accident.
At trial, Welter's case-in-chief also consisted of a variety of witnesses who testified concerning the pain and suffering he had endured as a result of the collision. Likewise, Pham and his medical experts gave testimony about the pain and suffering which Pham had endured.
*887 At the close of all of this evidence, the trial judge said that the case was "straight up and down and there is no in between" and that the facts did not support the giving of a comparative negligence instruction. Although by the lower court's comments it seemed to have ruled out comparative negligence, the next day the trial judge changed his mind and gave Instruction C-20, which reads, in pertinent part, as follows:
If you find from a preponderance of the evidence that both Welter and Pham were negligent in the operation of the automobiles involved in this accident as defined in Instructions P-4 A and D-5 A, and that the negligence of each was a proximate contributing cause of the accident in this case and that each party suffered damages as a direct proximate result of the accident then you shall proceed as follows:
1. Determine the total damages, if any, that Welter, Pham and Tran sustained as a direct proximate result of the accident, then
2. Determine percentage or degree of negligence of the two drivers, Welter and Pham; for example, 50% versus 50% or for example 75% versus 25%, etc. (the combined percentages must equal 100%).
When you have completed steps 1 and 2 above, complete the following form return same into court:
"We, the jury find Plaintiff/Driver Welter negligent by ____% and the Defendant/Driver Pham negligent by ____%; we find that the total damages suffered by Welter to be $ ____, the total damages suffered by Defendant/Driver Pham to be $ ____ and the total damages suffered by Defendant/Owner Tran to be $ ____."[2]
Following the reasoning set out in this instruction, the jury found that Welter suffered $40,000 in damages and that Pham suffered $30,000 in damages. The jury further found Pham 60% negligent and Welter 40% negligent.
Welter's liability carrier, State Farm Mutual Automobile Insurance Company, moved the lower court to correct its judgment pursuant to Miss. Code Ann. § 11-7-69 (Supp. 1986) which requires that there be but one judgment. Pham moved for an additur of his damages and a remittitur of Welter's damages. These motions were overruled by the trial court. Thereafter, Pham filed an appeal to this Court and Welter has cross-appealed. The same law firm which abandoned Welter during trial filed assignment of error VI-A which was totally contrary to Assignment VI-B and which was obviously to protect State Farm to the detriment of Welter. Welter's other attorney objected to this procedure and he filed Assignment of error VI-A.

I.
Pham assigns as error that:
The Trial Court Erred in Overruling Appellant's Motion for Additur or in the Alternative for a New Trial as to Damages.
Pham argues that he proved actual special damages in the amount of $28,682.70. The jury assessed his damages at $30,000, which converts to $1,327.30 for pain and suffering as a result of his injuries. In this connection, it bears emphasis that the $30,000 figure represents the jury's finding of Pham's damages before reduction for his 60% negligence. Consequently, Pham urges this Court that such an amount in compensation for pain and suffering is wholly inadequate.
Before this Court can address Pham's claim of inadequate compensation for pain and suffering, we must review the precedent set out in Miss. Code Ann. § 11-1-55 (Supp. 1986). This code section, providing a statutory constraint to altering a jury's verdict, reads as follows:
§ 11-1-55. Authority to impose condition of additur or remittitur
The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an additur *888 or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence. If such additur or remittitur be not accepted then the court may direct a new trial on damages only. If the additur or remittitur is accepted and the other party perfects a direct appeal, then the party accepting the additur or remittitur shall have the right to cross appeal for the purpose of reversing the action of the court in regard to the additur or remittitur.
This section requires that an additur may be granted in two situations: (1) if the court finds that the jury was influenced by bias, prejudice or passion or (2) if the damages were contrary to the overwhelming weight of credible evidence.
In applying these elements to the facts at hand, we turn to our holding in James v. Jackson, 514 So.2d 1224 (Miss. 1987), wherein we stated:
This Court in Biloxi (Biloxi Electric Co., Inc. v. Thorn, 264 So.2d 404, 405 (Miss. 1972)) states ". .. The only evidence of corruption, passion, prejudice or bias on the part of the jury is an inference, if any to be drawn from contrasting the amount of the verdict with the amount of damages." (Emphasis added).
Following our holding in Jackson, we analyze the elements of damages which the jury in the present case considered in arriving at their verdict. The elements of damages were (1) past and future pain and suffering; (2) past and future medical expenses; (3) lost wages, and (4) future disability.
Pham put on substantial proof of past and expected future pain and suffering. A review of the evidence reveals that Pham received considerable injuries from the accident. Immediately following the accident, Pham was admitted to the emergency room where he responded only to painful stimuli. At this time, he was noted to have a head injury with swelling of the right jaw, an enlarged, non-reactive pupil of the right eye; a large bruise on the mid-lower chest and upper abdomen; an obvious fracture of the right femur and severe ecchymosis and swelling of the right femur.
Due to Pham's condition, immediate exploratory surgery was initiated in order to determine the source of Pham's internal bleeding. The surgery revealed a 6 centimeter long, 2-3 centimeter deep tear in his left kidney as well as a laceration of the liver and spleen.
Upon completion of the abdominal surgery, Pham was stable enough in order for the orthopedic surgeon to repair his leg injury. This three-hour surgical procedure was known as a closed intermedullary nailing of the femur. The procedure, according to the record, entails making a hole in the top of the bone, running a wire down through the center of the bone and reaming it out to create a hollow shaft inside the bone. An eighteen inch long one-half inch diameter metal device called a nail was inserted into the middle of Pham's bone to stabilize the fracture. Pham, of course, would require future surgery in order to remove the intermedullary rod.
In addition to the above-described procedures, Pham was catheterized; had a penrose drain in his left flank to drain his kidney for approximately one week, and was given Demerol and Darvocet for pain. During this treatment period, Pham was in ICU for 12 days. He was transferred from ICU to the floor on July 28, 1984, and finally discharged on August 25, 1984. In total, Pham spent approximately six weeks in the hospital.
In follow-up treatment, Dr. Drake, Pham's physician, noted that on September 11, 1984, Pham was walking with crutches and still had discoloration and swelling of the thigh. On November 2, 1984, Pham was walking without crutches but had a limp and complained of pain in his leg, neck and tenderness in his thigh area. When Dr. Drake last saw Pham on May 8, 1985, he noted minimal rotary deformity in Pham's leg which caused the leg to be turned slightly out when he stood. When Pham testified as to the condition of his *889 leg, he stated the metal in his leg makes it hurt, it is "very hurt with feeling, unusual feeling."
We have considered the foregoing evidence presented by Pham in the court below and we hold that Pham put on ample proof of severe pain and suffering. In drawing this conclusion, we also find that the jury's finding as to future pain and suffering was so inadequate so "as to shock the conscience and indicate bias, prejudice and passion on the part of the jury." See Dorris v. Carr, 330 So.2d 872, 874 (Miss. 1976).
In addition to the elements of pain and suffering, the jury also considered the elements of past and future medical expenses. As proof of Pham's past and future medical expenses, he offered into evidence special damages totalling about $28,682.70, which are broken down into these categories:

 1. Biloxi Regional Medical Center $21,731.70
 2. AmServ 170.00
 3. Dr. Martin 230.00
 4. Dr. Holman 850.00
 5. Dr. Danielson 885.00
 6. Dr. Hawkins 396.00
 7. Dr. Harold 400.00
 8. Dr. Drake 2,020.00
 9. Future surgery (about) 1,500.00
 10. Loss of wages 500.00
 __________
 TOTAL MEDICAL $28,682.70

It is undisputed by Welter that Pham incurred or will incur these medical expenses. Miss. Code Ann. § 41-9-119 (1972) provides that "proof that medical bills were incurred because of injury is prima facie evidence that the bills were necessary and reasonable... ." James v. Jackson, 514 So.2d at 1226. Apparently, the jury considered the medical expenses to be reasonable and adequately compensated for them by finding that Pham's total damages were $30,000, only slightly more than the special damages.
Another area of damages was Pham's lost wages. He worked part-time for Thua Van Tran and was paid a couple hundred dollars each month. Pham estimated that he lost between $400 and $600 (we use $500) in wages for at least two months. This amount was accounted for in appellant's special damages, including the medical expenses, totalling $28,682.70 The jury adequately provided for Pham's lost wages.
The claim of future disability is linked with Pham's leg injury. Pham claims that he will need additional surgery. Pham's medical expenses which the jury took into consideration provided for between $1,000 to $1,500 (we use $1,500) for future surgery expenses to correct any other problems with Pham's leg. Thus, we find that the jury provided for this expense.
Having reviewed the elements of damage, we find that the jury ignored the strength of the evidence supporting Pham's "pain and suffering" and permanent partial disability. We hold that the finding of $30,000, only adequately compensated Pham for the $28,682.70 in special damages. This figure obviously ignores the categories of past and future pain and suffering and permanent partial disability. We consider $60,000 the minimum amount of damages a rational juror could have found that Pham sustained, considering the law and the evidence adduced at trial. Therefore, after a very careful examination of the record, we today order an additur of $30,000 to the finding of the jury as to damages and permanent partial disability. (See Miss. Code Ann. (1972) § 11-1-55 and Altom v. Wood, 298 So.2d 700 (Miss. 1974). We base this order on the fact that the jury was obviously influenced by "bias, prejudice, or passion ... [and] the damages awarded were contrary to the overwhelming weight of credible evidence."
Upon remand, Welter of course, has the option of accepting the increase of Pham's damages to $60,000, before reduction for Pham's 60% negligence, or having a new trial solely on the issue of damages.

II.

Did the Lower Court err in Granting a Comparative Negligence Instruction?
The lower court gave C-20 which reads in pertinent part as follows:
If you find from a preponderance of the evidence that both Welter and Pham were negligent in the operation of the automobiles involved in this accident as *890 defined in instruction P-4(a) and D-5(a), in that the negligence of each was a proximate and contributing cause of the accident in this case ... then you shall proceed as follows... .
It is Welter's contention on cross-appeal that there was no testimony to support a comparative negligence instruction. Welter urges that the accident could not have occurred through a combination of the negligence of both parties. Based on this, Welter argues that when the act of negligence is the sole proximate cause of the injury, the rule of comparative negligence has no application. See Salster v. Singer Sewing Machine, 361 F. Supp. 1056, 1060 (D.Miss. 1973); Robinson v. Morrison, 246 So.2d 94 (Miss. 1971).
In addressing Welter's argument, we turn to the reasoning in Akin v. Cowie, 405 So.2d 903 (Miss. 1981). In Akin, we cite a factual situation from Morrell Packing Co. v. Branning, 155 Miss. 376, 124 So. 356 (1929):
In Morrell Packing Co. v. Branning, 155 Miss. 376, 124 So. 356 (1929) appellant argued that an instruction was erroneous because, in the testimony offered by the respective parties, the Appellee claimed that she was not negligent at all, and the collision was caused solely by the negligence of the Appellant, Adams, while Adams claimed he was not negligent, but the collision was caused solely by the negligence of Appellee; consequently, there was no room for a finding by the jury that it was caused by the negligence of both of them.
These facts are obviously very similar to the case at hand. In disposing of this argument, in Morrell Packing Co., we held:
The fact that the driver of each of the automobiles involved in the collision testified that it was caused solely by the negligence of the other does not render an instruction based on our Comparative Negligence Statute (Hemingway's Code 1927, § 516) inapplicable or erroneous. The jury was not required to accept, in its entirety, the theory of either party, and it was its duty to consider all the testimony of the witnesses in the light of the physical facts and the circumstances shown, and to determine therefrom the negligence, if any, of the respective parties. (155 Miss. at 382, 124 So. at 357).
As in Morrell Packing Co., the jury in this case is not required to accept the theory of either party in this case. It is the jury's duty to consider all the testimony and to determine, therefore, the negligence, if any, of the respective parties. Moreover, we have held in motor vehicle accident cases where each side claimed the other's negligence solely caused the accident, that the circuit judge committed no error in granting a comparative negligence instruction. See Ferguson v. Denton, 239 Miss. 591, 124 So.2d 279 (1960); Gilliam v. Sykes, 216 Miss. 54, 61 So.2d 672 (1952); Morrell Packing Co. v. Branning, 155 Miss. 376, 124 So. 356 (1919). When there is evidence to support a comparative negligence instruction, it is not error to give it even though each party may contend the other was entirely at fault. We find there was evidence in this case from which the jury could have found some negligence on the part of both drivers. Therefore, we hold that the trial court was not in error in giving the comparative negligence instruction.

III.

Proposition Number VI-A

Did the Trial Judge err in overruling the Motion to Correct Judgment?

Proposition Number VI-B

Did the Trial Judge Correctly Overrule the Motion to Correct Judgment?
The appellant/cross-appellant in this cause, Andrew Welter is supposedly represented by two law firms. Russell S. Gill represents Mr. Welter in his original claim against Tan Minh Pham. Floyd G. Hewitt, Jr. and Peter C. Abide of Bryan, Nelson, Schroeder and Compton were retained by Mr. Welter's automobile liability insurance carrier, State Farm Mutual Automobile Insurance Co., to represent Mr. Welter in the counter-claim filed by Pham. During the pendency of this appeal, Mr. Welter's two *891 sets of attorneys disagreed on whether or not certain issues should be raised at trial and in the appellee's/cross-appellant's brief because as to the motion to correct judgment, the lawyers employed by State Farm, totally abandoned their client and jumped ship to rescue State Farm whereas Welter's other attorney, Russell S. Gill, remained true to his client. Each of Welter's lawyers has a different argument pertaining to the issue in dispute; hence Assignments of Error VI-A and VI-B.
We discuss Assignment VI-A.
Counsel for Welter's Insurance Company cites Miss. Code Ann. § 11-7-69 which provides in pertinent part:
If it appears that the plaintiff's demand is valid and exceeds that of the defendant, the plaintiff shall have judgment for only that portion of his demand which exceeds the valid demand of the defendant's, with costs of court, but if it appears that the demand of the defendant is valid, and exceeds the demand of the plaintiff, the defendant shall have judgment for the amount by which his claim exceeds the claim of the plaintiff, with costs of court.
Considering this Code section, counsel for the insurance company not a party argues,
[t]he jury returned a verdict in favor of Welter for $40,000 in favor of Pham on his counter-claim in the sum of $30,000. After reduction of the damages based on the comparative fault of each party, the trial court filed its judgment June 18, 1986, allowing Welter to recover $24,000 and allowing Pham to recover $12,000 in his counter-claim. According to the mandatory language of Miss. Code Ann. § 11-7-69, there should be but one judgment. Accordingly, the lower court should have entered a net judgment in favor of Welter in the amount of $12,000. See also, Richmond v. Van's Moving & Storage Co., 197 So.2d 235 (Miss. 1967).
We discuss Assignment VI-B.
Welter agrees that § 11-7-69 provides that a plaintiff's verdict should be offset by defendant's verdict, or vice versa. However, this was not done by the trial judge, even though State Farm's attorney (supposedly representing Welter) raised the issue. According to Welter, to reach a similar result in this case would be manifestly unjust, and contrary to the public policy of the state. Welter questions:
[w]hy is there a financial responsibility law in this state? Why should State Farm, Welter's liability carrier, enjoy a windfall and pay nothing while Andrew Welter pays for Pham's damages (assuming they stand) by a reduction of Welter's $24,000 verdict to $12,000? Does a law that pre-dates the Code of 1942 have blind application to parties who are both insured? These questions, among others, need answers in this appeal.
The questions raised by Welter are valid ones and should be answered by this Court. The question is posed: Why should State Farm, Welter's liability carrier, enjoy a windfall and pay nothing for Pham's damages by a reduction of Welter's damages? The question also is applicable to the liability carrier of Pham. We answer this question by holding that this procedure is manifestly unjust.
To support our position we turn to a holding from our sister southern state of Florida. In Stuyvesant Ins. Co. v. Bournazian, 342 So.2d 471 (Fla. 1976), the Supreme Court of Florida was faced with a question very similar to the one we address today. The Florida court had to determine whether the concept of "set-off" could be read into a standard automobile liability insurance contract and require a partially-negligent but fully-insured person to absorb a portion of the cost of his negligence. Similarly, if State Farm Mutual were allowed to apply Miss. Code Ann. § 11-7-69 to the facts at hand, the insurer could escape his contract liability to Welter due to the fact that Pham's damages would be absorbed by the amount of money Welter would collect from Pham. In Bournazian, the Florida Supreme Court found:
The concept of "set-off" ... applies only between uninsured parties to a negligence action, or to insured parties to the extent that insurance does not cover their mutual liabilities. The doctrine has *892 no effect on the contractual obligations of liability insurance carriers. Id. at 474.
In arriving at this holding, the Florida court explained that "the notion of `set-off' should have no effect on the contractual obligation of liability insurance carriers to pay the amounts for which their insureds are legally responsible." Id. at 473. This explanation is in rebuttal to Stuyvesant Insurance Company's argument that "the amount legally owed by each party to the other is the net amount receivable after set-off has been applied rather than the total amount awarded to each by a jury after comparing relative fault and damages." The Florida court, finding Stuyvesant's argument a restrictive view of liability, writes:
[this] view of "liability" is defective in a case tried under comparative negligence, however. The effect of set-off as an antecedent to payment by each insurer is to abrogate the parties respective insurance contracts by providing an unwarranted second level of comparative recovery reductions  the jury's award being first. Id. at 473.
The facts of the instant case illustrate the same problem faced by the Florida court. If both Welter and Pham carry adequate automobile insurance, in the absence of a mandatory "set-off" rule, Welter would recover $24,000 ($40,000 reduced by 40% of his negligence) from Pham's insurer to compensate him for the serious injuries caused by Pham, and Pham would receive $12,000 ($30,000 reduced by his 60% negligence) from Welter's insurer to compensate him for the serious injuries caused by Welter. However, under the set-off rule or the application of § 11-7-69, Welter's recovery from Pham's insurance company is reduced to $12,000 and Pham is denied any recovery whatsoever from State Farm Mutual.[3] Such a mandatory set-off diminishes both Welter's and Pham's recovery and accords both their insurance companies a corresponding windfall at their insureds' expense.
Based on this analysis, this Court is in full agreement with the Florida court in Bournazian where the Florida court held:
Nothing in Hoffman [v. Jones, 280 So.2d 431 (Fla. 1973)] the insurance laws, or the public policy of this state justifies our reading into a standard automobile liability insurance contract a requirement that a partially-negligent but fully-insured person should absorb a portion of the cost of his negligence. The purpose of the contract is precisely to the contrary, being designed and paid for to relieve the insured of all such obligations (within policy limits and over agreed deductibles, of course). Id. at 474.
California has followed the Bournazian case in Jess v. Herrmann, 26 Cal.3d 131, 161 Cal. Rptr. 87, 604 P.2d 208 (1979), where the Supreme Court of California held in a case similar to the case sub judice:
Although the insurer in Stuyvesant, like the numerous amici in the instant case, argued that its obligation under its insurance policy should be viewed only as an obligation to pay sums owed by its insured after the setoff of any debts which the injured party owed its insured, the Florida court emphatically rejected that suggestion. The court recognized that in securing insurance coverage an insured does not thereby authorize its insurance company to reduce its own liability by, in effect, appropriating to its own benefit a separate asset of the insured, i.e., the insured's right to recover for his own injuries.
* * * * * *
At least in cases in which both parties to a lawsuit carry adequate insurance to cover the damages found to be payable to an injured party, both the public policy of California's financial responsibility law and considerations of fairness clearly support a rule barring a setoff of one party's recovery against the other.
* * * * * *

*893 Under these circumstances, we conclude that the current setoff statutes cannot properly be interpreted to require setoff in cases in which such a setoff will defeat the principal purpose of California's financial responsibility law and will provide an inequitable windfall to an insurance carrier at the expense of the carrier's insured.
Accordingly, we find that § 11-7-69 is not applicable in diminishing the responsibility of an insurer in performing its contractual duty.
Before closing, we address the actions of the attorneys representing the interest of State Farm Mutual. Having accepted the responsibility of representing Welter, these attorneys, contrary to representing Welter's interest, attempted to penalize its client by urging the setting-off of the separate verdicts. To this end, we sternly recommend that the attorneys with an absolute obligation to represent Welter but instead representing the interest of State Farm Mutual, review Rule 1.7 Conflict of Interest: General Rule, Miss.Code of Professional Conduct[4] as well as our holding in Hartford Acc. & Indem. Co. v. Foster, 528 So.2d 255 (Miss. 1988) where we stated:
Although a lawyer may ethically in some circumstances, and with his client's consent, limit the objectives of his representation, Rule 1.2 Scope of Representation, par. (c), this can never authorize the attorney to engage in dual legal representation entailing professional decisions on his part which stand to benefit one client at the expense of the other. Rule 1.7, supra.

Any lawyer who attempts to represent two adverse masters places himself in a precarious, perilous position.
These Professional Code statements are distilled principles of ancient, time-honored, and judicially-enforced conduct on the part of lawyers in representing clients. Without them our system of justice would be doomed.
A liability insurance policy undertakes to insure a person up to a specified sum of money caused by his negligence. The policy requires the company to defend any lawsuit charging negligence, and also authorizes the company to select the attorney and conduct the defense of the action. The insured is required to fully cooperate with the company in undertaking the defense. Because the company is footing the bill for the defense, and will be obligated to pay any judgment rendered (if it does not settle the case), it is clearly entitled to select the attorney and conduct the defense. This does not, and indeed could not, authorize the company to undertake or pursue any defense prejudicial to the monetary interest of the insured. It hardly needs to be added that no insurance policy can validly diminish a lawyer's duty to his insured client. Id. at 269.
The law firm assigned by State Farm to represent Welter abandoned him at a crucial part of the litigation and not only did not represent Welter, but represented another client (State Farm) to the detriment of Welter. Welter had paid for representation when he paid his State Farm premium.

CONCLUSION
Considering the conflicting testimony as to liability, this Court finds that the trial *894 court correctly instructed the jury as to the possibility of contributory negligence of each party, thereby leaving to its discretion the issue of negligence of both drivers. As to the question of damages, this Court is persuaded by Pham's evidence supporting his claim of past and future pain and suffering and permanent partial disability. The jury verdict for Pham was "so grossly inadequate as to shock the conscience;" therefore, we order an additur of $30,000 to Pham's jury finding or in the event Welter declines to accept it, a new trial on the question of damages only.
Additionally, we find that the concept of "set-off" as argued by State Farm Mutual is not applicable in a situation such as the one at bar in order to diminish the recovery of the insured while providing a corresponding windfall to the insurer. We caution all attorneys representing both the insurer and the insured in the future to refrain from any action which conflicts with our holding in Foster v. Hartford, supra, and the Mississippi Code of Professional Conduct.
Accordingly, the final judgment of the Circuit Court of Harrison County as to the jury's findings of damages are affirmed with the exception that this Court makes a $30,000 additur to the finding of damages to Tan Minh Pham or in the alternative a new trial at Welter's option. We affirm the jury's finding of Welter's damages.
AFFIRMED, WITH ADDITUR TO TAN MINH PHAM, OR IN THE ALTERNATIVE A NEW TRIAL AT HIS OPTION.
HAWKINS P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and PITTMAN, JJ., concur.
ROY NOBLE LEE, C.J., dissents without opinion.
DAN M. LEE, P.J., dissents as to part I and concurs as to parts II and III.
HAWKINS, Presiding Justice, specially concurring in denial of Petition for Rehearing:
Miss. Code Ann. § 11-7-69 is a perfectly sensible statute in cases in which each opposing party has a valid claim against the other. At the conclusion of trial, under this statute the court decides what each owes the other, and subtracts the lesser from the greater, giving the party with the greater damage the net remaining. It is an arithmetic shortcut, and of course, works quite well, with one exception.
When the parties have claims against each other covered by liability insurance companies, then, obviously, the statute works a hardship on the individuals, and to the benefit of the insurance carriers. The question, therefore, arises, should the statute apply under this exception.
I agree with the majority that in such case the statute has no application. It would be well for circuit courts to consider, in cases such as this, whether to sever the trial between the plaintiff and counter-plaintiff under MRCP Rules 20(b), 40(b). State Farm Fire and Cas. Co. v. Simpson, 477 So.2d 242, 254 (Miss. 1985). This would obviate the problem which arose in this case.
I agree with the attorneys for petitioner Welter that the situation in this case was not the same as Hartford Acc. & Indem. Co. v. Foster, 528 So.2d 255 (Miss. 1988). Here Welter had his retained counsel, and the insurance carrier was entitled to employ separate counsel, if it desired, to defend the counterclaim. The counsel for the insurance carrier did not mislead or overreach Welter, who had his own separately employed lawyer all the time. The insurance counsel also had an ethical obligation to his client, the insurance carrier, to notify it and see that it did not forfeit whatever right it had to assert the application of Miss. Code Ann. § 11-7-69 to this case.
It would have been wise and prudent for this attorney to have notified the court of this possible conflict, and asked for an opportunity for the insurance company, if it wished, to protect its interest with separate counsel. While I do not think this attorney should have proceeded on his own to represent the insurance company on this question, neither do I see it as a serious breach of ethics, such as alleged in Hartford, supra. *895 If the insurance carrier was entitled to assert in court that the statute should apply to this case, it manifestly was entitled to have some attorney represent it in doing so. It worked no greater hardship on Welter for this attorney to assert it than for a separately employed counsel to do so. Or, to put it another way, it gave the insurance company no advantage over Welter for this particular attorney to represent it on this sole question, rather than have another, separately employed attorney do so.
Cases such as this teach us that courts, as well as practicing attorneys, are still learning.
Counsel for petitioner Welter is also correct, in my view, that he should not have been criticized in the original opinion without giving him an opportunity to be heard. He was given that opportunity, however, in the petition for rehearing which has been thoroughly considered by the Court.
With these comments I would modify the original opinion, but deny the petition.
DAN M. LEE, P.J., concurs, but would grant petition for rehearing.
NOTES
[1] Later we discuss the reason for these contradictory assignments of error and the bizarre behavior of attorneys which State Farm employed to represent Welter, but which firm took a legal position opposite Welter's interest.
[2] A verdict in this form is authorized by Rule 49(b), Miss.R.Civ.P.
[3] For all of this, of course, must be modified in light of our decision above on the question of Pham's additur.
[4] (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless the lawyer reasonably believes:

(1) the representation will not adversely affect the relationship with the other client; and
(2) each client has given knowing and informed consent after consultation. The consultation shall include explanation of the implications of the adverse representation and the advantages and risks involved.
(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless the lawyer reasonably believes:
(1) the representation will not be adversely affected; and
(2) the client has given knowing and informed consent after consultation. The consultation shall include explanation of the implications of the representation and the advantages and risks involved.