IN THE COURT OF APPEALS

9/9/97

OF THE

STATE OF MISSISSIPPI

NO. 95-CA-00440 COA

EDDIE SIMS AND MISSISSIPPI

MATERIALS COMPANY APPELLANTS

v.

LAWRENCE MINOR APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. FRANK G. VOLLOR

COURT FROM WHICH APPEALED: WARREN COUNTY CIRCUIT COURT

ATTORNEYS FOR APPELLANTS: JAMES D. HOLLAND

DOUGLAS G. MERCIER

ATTORNEY FOR APPELLEE: MARSHALL SANDERS

NATURE OF THE CASE: PERSONAL INJURY

TRIAL COURT DISPOSITION: JURY AWARD OF $60,000 FOR APPELLEE

MOTION FOR REHEARING FILED: 9/24/97

CERTIORARI FILED: 12/1/97

MANDATE ISSUED: 3/12/98

BEFORE McMILLIN, P.J., COLEMAN, AND PAYNE, JJ.

McMILLIN, P.J., FOR THE COURT:

The case before the Court involves a claim by Lawrence Minor for personal injuries received in a motor vehicle accident in Warren County. A Warren County Circuit Court jury returned a verdict in Minor's favor, and the defendants, Eddie Sims and Mississippi Materials Company, have appealed. They suggest three errors that would require the judgment to be reversed. This Court, after due consideration, has determined that the judgment entered on the jury's verdict should be affirmed.

I.

Facts

This accident occurred at the intersection of Halls Ferry Road and the off-ramp of Interstate Highway 20 in the City of Vicksburg. It involved an automobile driven by Minor and a concrete delivery truck driven by Sims in the course of his employment with Mississippi Materials. For sake of clarity, this Court will refer, when appropriate, to Sims and his employer collectively as "the defendants" rather than as "the appellees."

The facts are largely undisputed. Minor was traveling south on Halls Ferry Road as he approached the intersection. Halls Ferry Road has two southbound lanes in the area of the I-20 intersection. Vehicles leaving I-20 by the ramp in question are directed in an easterly direction toward a stop sign at the intersection. Sims was at a stop sign at the end of the off ramp attempting to negotiate his

truck across the two southbound lanes of Halls Ferry and into the northbound lanes. The evidence showed that the outer southbound lane of Halls Ferry Road was so congested at the time that traffic was at a virtual standstill. The inner lane in which Minor was traveling, however, was clear as Minor approached. A motorist in the outer southbound lane stopped just before crossing in front of Sims's truck, permitted a break to appear in the southbound traffic, and by a hand signal, indicated that he would permit Sims to maneuver his truck across that lane of travel. Sims did so and proceeded across the outer lane and into the inner southbound lane as Minor approached. Minor was unable to avoid a collision, and he struck the front of the concrete truck. The point of impact was in Minor's proper lane of travel.

The posted speed limit for Minor at the place of the accident was forty miles per hour. The defendants presented the testimony of the driver of a vehicle traveling behind and in the same direction as Minor. The witness testified that she was traveling at an unknown speed, which she estimated not to be over 35 miles per hour, and that Minor's vehicle appeared to be pulling away from her immediately before the accident. There was also testimony that there were no skid marks in Minor's lane of travel, indicating that he had not applied his brakes prior to impact.

On these facts, the trial court granted Minor's request for a peremptory instruction that Sims was negligent. The defendants, arguing that Minor was also negligent to some degree, requested the trial court to instruct the jury on the issue of comparative negligence; however, the trial court refused. The case was submitted to the jury on the issue of damages, and they returned a verdict in the amount of $60,000. This appeal followed.

The defendants' first issue involves claims of error in the manner in which the jury was instructed. The other two issues involve evidentiary questions concerning the admissibility of proof of the extent of Minor's injuries attributable to this accident.

II.

Instructions on Comparative Negligence

The defendants break down their claim of error in the jury instructions into three different sub-issues. They urge that (a) the trial court erred in granting a peremptory instruction as to Sims's negligence, (b) the trial court erred in refusing to instruct as to certain facts alleged by the defense that, if found to be true by the jury, would require a finding that Minor's own negligence contributed in some degree to the accident, and (c) the trial court compounded this error by failing to give an instruction that told the jury how to apportion the negligence and compute the appropriate reduction in the damage award against these defendants.

The defendants elected, however, to combine these three separate issues into one argument in their brief, claiming that they "possess common elements." This Court, in reviewing the brief, finds no part of the combined argument directed to sub-issue (a). In order for Sims's negligence to have been a legitimate jury issue, the trial court would have been required to be of the opinion that it was properly

within the province of the jury, on the proof, to return a verdict in favor of the defendants and against Minor. The trial court apparently concluded -- and this Court cannot disagree with the conclusion -- that the uncontradicted facts of this case established negligent conduct on the part of Sims, as a matter of law, and that this negligent conduct was the proximate cause or a proximate contributing cause of the accident. The trial court may grant a peremptory instruction on negligence if it concludes that reasonable and fair-minded jurors properly following the law could only conclude that the defendant was, indeed, negligent. *See Butler v. Lott Furniture Co.,* 482 So. 2d 1134, 1135 (Miss. 1986); *Butler v. Chrestman,* 264 So. 2d 812, 814 (Miss. 1972). The defendants offer no convincing argument as to how, on these facts, a finding that Sims was not negligent could have been proper. We, therefore, decline to consider the matter further.

Of course, a finding of negligence on the part of the defendant does not answer the second sub-issue as to whether the plaintiff may also have been negligent and whether that negligence may have been a proximate contributing cause of the accident. If there is credible proof in the record that would support a finding of negligence on Minor's part that contributed to the accident, then the defendants were entitled to a comparative negligence instruction. *See* Miss. Code Ann. § 11-7-15 (1972); *Pham v. Welter,* 542 So. 2d 884, 890 (Miss. 1989); *see also Tharp v. Bunge Corp.,* 641 So. 2d 20, 27 (Miss. 1994) (stating that a party is entitled to jury instruction regarding all material issues presented in pleadings or evidence). The defendants suggest on appeal that they proved three separate acts on Minor's part, any one of which would properly permit the jury to assign some part of the blame for this accident to him. These alternative theories of Minor's alleged negligence include (a) proof that Minor was exceeding the speed limit as he approached the intersection, (b) Minor's failure to keep a proper lookout so as to see the truck entering his lane of travel and avoid the collision, and (c) Minor's failure to yield the right-of-way to a vehicle already in the intersection.

A.

Proof of Speeding

The only proof that Minor was speeding was the testimony of the driver behind him that she was going no more than 35 miles per hour and that Minor's vehicle appeared to be leaving her. This witness later said her top speed at the time was 30 miles per hour. She could only say that Minor was "going a little bit faster than I was." When asked to estimate Minor's speed, she said, "I mean I'm not an expert on that, but you know he was, he was, I would say 40, 45, 50." There is authority that "a witness who observed the moving object in question will be permitted to estimate its speed if he possesses some knowledge or experience, however slight, which will enable him to form an opinion." *Howard v. State*, 346 So. 2d 918, 920 (Miss. 1977). However, in the *Howard* case, which was a criminal case charging vehicular homicide, the speed of the vehicle in question was estimated to be between 90 and 95 miles per hour, and the State was careful to show the witness had "some prior experience in judging speed." *Id.* In this case, there was no indication that the following driver possessed the ability to gauge the speed of a moving vehicle with any particular degree of accuracy. She was unable to establish her own speed within five miles per hour and could assign no greater probability to her estimate that Minor was going 50 miles per hour than her estimate that he was

going 40 miles per hour. This equivocal testimony from a witness not qualified as to her ability to estimate speed, consisting of a range of speeds that encompassed the legal limit, appears insufficient to create a contested issue of fact as to whether Minor was exceeding the posted speed limit.

B.

Failure to Keep a Proper Lookout

The defendants' argument concerning Minor's failure to keep a proper lookout involves the proposition that a concrete truck is a large vehicle, projecting high into the air, and thus, easily visible even in congested traffic. The ready visibility of a truck because of its size does not, however, carry with it the proposition that everyone observing such a truck must be prepared for the chance that the truck will, without warning, pull from a side road into the lane of oncoming vehicles. A driver approaching an intersection with the right-of-way is entitled to assume that those attempting to enter the through road from a side road will observe all traffic signals and rules of the road and will properly yield to through traffic. *McKinzie v. Coon,* 656 So. 2d 134, 141 (Miss. 1995) (citing *Vines v. Windham,* 606 So. 2d 128, 131 (Miss. 1992)). Sims testified that his view of traffic approaching in Minor's lane was impaired by a school bus and that he did not see Minor's vehicle until it was too late to prevent his truck from entering Minor's lane of travel. Sims's election to rely upon the unfortunate attempt at courtesy by the driver who waved him across one lane and into Minor's path, rather than upon his own ability to observe oncoming traffic, does not seem to be the kind of act the law would require Minor to anticipate. We find nothing in this record to support a finding that Minor could have observed the truck entering his lane of travel sufficiently in advance for him to have stopped and prevented the collision. Such a finding by the jury on this proof would have been based on nothing more than conjecture and speculation.

C.

Yielding at an Intersection

Finally, the defendants argue that Minor had a duty under section 63-3-801 of the Mississippi Code to "yield the right-of-way to a vehicle which has entered the intersection from a different highway. . . ." Miss. Code Ann. § 63-3-801 (Rev. 1996). This argument is essentially indistinguishable from the previous one. Certainly, had there been a legitimate basis in fact for the jury to conclude that Minor should have observed the concrete truck entering his lane of travel in time to avoid the collision, his failure to do so could be seen as the proximate cause or, at least, a contributing proximate cause of the accident. The statute must be read with a measure of common sense. Every driver who, without

proper precaution, enters an intersection for which he did not possess the right-of-way cannot claim the statute's benefits against an oncoming driver simply by winning the race into the intersection by the brief instant that precedes the collision. The trial court concluded that the evidence would not fairly permit the jury to find that the concrete truck had been in the intersection enough in advance for Minor to have seen it and avoided the collision. This Court, in our independent review of the record, can find no testimony that convinces us that the trial court was in error in so concluding.

If there is no factual basis for a contributory negligence instruction, it is reversible error to grant one. *Vines v. Windham,* 606 So. 2d 128, 131 (Miss. 1992). In this case, the trial court properly declined to permit the jury to speculate, without solid evidence, on various theories under which Minor might have avoided the consequences of Sims's ill-advised move into this busy intersection. There is no basis for reversal on these issues.

III.

Errors Regarding Evidentiary Rulings

Again, the defendants have assigned separate issues for consideration but proceeded to combine their argument on the points. We find it necessary, nevertheless, in our deliberation to consider the issues separately. They consist of claims that (a) the trial court erred in permitting Minor to designate an expert witness only eight days prior to trial, and (b) the trial court erred in refusing to permit the defendants to introduce the deposition of Dr. John Evans, Minor's treating physician.

A.

The Designation of Dr. Lollar as an Expert

Minor's counsel supplemented discovery eight days prior to trial to disclose his intention to call Dr. Daniel Lollar, a chiropractor, as an expert witness on the extent of Minor's injuries and resulting permanent disabilities. The defendants sought to bar the introduction of Dr. Lollar's testimony, claiming that his designation so late in the day was unreasonable.

The rules of discovery require the parties to "seasonably" supplement discovery responses to provide information of any additional "person expected to be called as an expert witness at trial" not disclosed in previous responses. M.R.C.P. 26(f)(1)(B). In considering a claim that a disclosure too near the trial date is unseasonable, the proper inquiry by the court is whether there has been prejudice to the opposing party. *Eastover Bank v. Hall,* 587 So. 2d 266, 272 (Miss. 1991).

The defendants claim they were prejudiced by this late disclosure since it revealed, for the first time, that Minor was claiming permanent physical impairment from his injuries, and the defendants did not have adequate time to prepare to meet this previously unasserted element of his claim for damages.

At a hearing on the motion, Minor's counsel represented to the court, without contradiction, that he had furnished a copy of Dr. Lollar's evaluation, which included a finding of permanent disability, to defense counsel in November 1994, over three months before trial. The trial court seemed to be of the opinion that although Dr. Lollar was not formally designated as an expert witness until a few days prior to trial, that fact should not have come as any particular surprise to defense counsel, since they had been made aware several months earlier of Dr. Lollar's involvement. This Court finds that such a conclusion by the trial court was within the range of its discretion to determine whether the somewhat-belated disclosure of Dr. Lollar as an expert was so untimely as to warrant exclusion of his testimony. Therefore, the trial court's decision to permit Dr. Lollar to testify is not reversible error.

B.

The Inadmissibility of Dr. Evans's Deposition

Dr. Evans, Minor's treating physician, had originally been designated by plaintiff's counsel as an expert witness. Shortly before trial, Minor's attorney notified defense counsel that he no longer intended to call Dr. Evans as a witness. Defense counsel then noticed Dr. Evans's deposition for the afternoon of February 20, 1995, the day before trial was to begin. The notice was dated February 16, 1995. On February 17, 1995, Minor's attorney filed a motion for protective order to halt the deposition, claiming insufficient notice and an unavoidable scheduling conflict. No action was taken on the motion prior to the time for the deposition; however, Minor's counsel failed to appear at the deposition. Defense counsel proceeded to take the deposition in the absence of opposing counsel and proposed to have it admitted into evidence at trial. The trial court refused to admit the deposition, citing the inadequate notice provided Minor's counsel.

Mississippi Rule of Civil Procedure 32(a) provides that a deposition, under certain circumstances, "may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof . . . ." M.R.C.P. 32(a). The defendants argue on appeal that circumstances beyond their control required the giving of such short notice and that, on the peculiar facts of this case, the notice given was the best they could do and was, therefore, reasonable. For that reason, they claim error in the trial court's refusal to admit the deposition.

The defendants were of the position that Minor had fully recovered from his injuries received in the wreck and that his long-term physical complaints, assuming they were legitimate, were attributable to medical conditions that pre-dated the accident. Since, up until eight days prior to trial, Dr. Evans had been the designated medical expert for Minor, the defendants seemed to believe they could, in cross examination, elicit the fact that Dr. Evans shared the defendant's belief that Minor had fully recovered from his accident-related injuries. However, the defense had made no effort to depose Dr. Evans during the normal discovery phase of the case or otherwise ensure the availability of this evidence at

trial.

Minor was under no duty to call Dr. Evans as a part of the presentation of his case. The designation of a particular person as a potential expert witness does not, of itself, entitle the other side to assume this witness will testify. If defense counsel believed Dr. Evans had information vital to the defense, it was incumbent upon him to preserve the evidence through a deposition taken during the discovery phase or to obtain Dr. Evans's presence at trial. There is no basis to suggest that Dr. Evans's testimony concerning the progress of Minor's recovery from his accident-related injuries could not have been obtained by the defense through such means. This was information garnered by Dr. Evans as a treating physician and was, thus, not "acquired or developed in anticipation of litigation or for trial" so as to limit its discoverability under Mississippi Rule of Civil Procedure 26(b)(4). Also, it was evidence for which the physician-patient privilege had been waived under Mississippi Rule of Evidence 503(f), since Minor had placed this "aspect of his . . . physical . . . condition" in issue by filing suit. M.R.E. 503(f).

Defense counsel relied on the fact that Minor had designated his treating physician as an expert witness to conclude that the treating physician's testimony at trial was assured. That reliance was misplaced. This Court is of the opinion that the trial court handled this matter properly and that this eleventh-hour deposition, taken without the presence of Minor's counsel and on insufficient advance notice, was not admissible. The trial court properly observed, in ruling on this issue, that it is incumbent on both sides of litigation to prepare their cases independent of the other. The last minute decision by Minor's counsel not to call Dr. Evans did not unfairly deprive the defense of any fundamental right in this litigation. This claim of error is without merit.

**THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS, EDDIE SIMS AND MISSISSIPPI MATERIALS COMPANY.**


**BRIDGES, C.J., THOMAS, P.J., DIAZ, PAYNE, AND SOUTHWICK, JJ., CONCUR. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY HERRING, HINKEBEIN, AND KING, JJ.**


IN THE COURT OF APPEALS

9/9/97


OF THE


STATE OF MISSISSIPPI

NO. 95-CA-00440 COA

EDDIE SIMS AND MISSISSIPPI

MATERIALS COMPANY APPELLANTS

v.

LAWRENCE MINOR APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

COLEMAN, J., DISSENTS:

I agree with the majority that "[i]f there is credible proof in the record that would support a finding of negligence on Minor's part that contributed to the accident, then the defendants were entitled to a comparative negligence instruction." (See majority opinion, p.4.) I respectfully dissent because I find that the record contains sufficient evidence of Minor's negligence to create a jury issue about whether his negligence contributed to the accident. I therefore opine that the trial judge erred both when he refused to grant the defendants' requested instructions on comparative negligence and when he granted Minor's peremptory instruction that Sims was negligent in the operation of Mississippi Materials' truck, so I would reverse the trial court's judgment for Minor and remand this case for a new trial.

## I. The doctrine of comparative negligence

Section 11-7-15 of the Mississippi Code of 1972 is the basis for this issue.[1] It permits a jury "to reduce an award of damages for negligence in proportion to the plaintiff's own negligent contribution to the injury." *Vines v. Windham*, 606 So. 2d 128, 133 (Miss. 1992) (citing *Pham v. Walter*, 542 So. 2d 884 (Miss. 1989)). "As a general proposition contributory negligence is an affirmative defense and the burden of proving it is upon the defendant." *Johnson v. Howell*, 213 Miss. 195, 56 So. 2d 491, 492 (1952) (citations omitted).

Even where plaintiff insists that the defendant's negligence is the sole, proximate cause of plaintiff's damages and defendant equally insists that plaintiff's negligence is the sole proximate cause of plaintiff's damages, the Mississippi Supreme Court has held that it is not error for the trial court to give an instruction on comparative negligence. In *Pham v. Welter,* 542 So. 2d 884, 885 (Miss. 1989), Welter sued Pham for the injuries he sustained in a collision between his vehicle and the vehicle Pham was driving. The jury found Welter forty percent (40%) negligent and Pham sixty percent (60%) negligent and awarded the parties $40,000 and $30,000 respectively. Both parties appealed. One of the issues was: "Did the lower court err in granting a comparative negligence instruction?" *Id.* at 889. Welter argued that "there was no testimony to support a comparative negligence instruction." *Id.* at 890. Welter asserted that the accident could not have occurred with both parties being negligent; thus, "when the act of negligence is the sole proximate cause of the injury, the rule of comparative negligence has no application." *Id.* The Mississippi Supreme Court rejected Welter's argument and opined as follows:

[T]he jury in this case is not required to accept the theory of either party in this case. It is the jury's duty to consider all the testimony and to determine, therefore, the negligence, if any, of the respective parties. Moreover, we have held in motor vehicle accident cases where each side claimed the other's negligence solely caused the accident, that the circuit judge committed no error in granting a comparative negligence instruction. When there is evidence to support a comparative negligence instruction, it is not error to give it even though each party may contend the other was entirely at fault. We find there was evidence in this case from which the jury could have found some negligence on the part of both drivers. Therefore, we hold that the trial court was not in error in giving the comparative negligence instruction.

*Id.*

The defendants do not pretend that Sims was not negligent; neither do they assert that Minor's negligence was the sole proximate cause of the collision in which Minor was injured. However, I suggest that if the record in this case contains evidence of Minor's negligence which is sufficient to satisfy the defendants' burden of proof that Minor was negligent in the operation of his car, then the trial court ought to have instructed the jury on the issue of Minor's comparative negligence.

The majority opinion relates and examines the three grounds upon which the defendants assert that Minor was negligent in the operation of his vehicle: (1) speeding, (2) failure to keep a proper look-out, and (3) failure to yield the right-of-way to Mississippi Materials' truck, which, they argue, had already entered the intersection before Minor's automobile collided with it. If the defendants met their burden of proof on any one of these three grounds, then perforce the trial judge erred when he refused the appellants' requested jury instructions on Minor's comparative negligence.

## II. Speeding

Sixty five years ago the Mississippi Supreme Court held that a violation of a "speed statute enacted for the safety of the traveling public" was negligence. *Terry v. Smylie*, 161 Miss. 31, 133 So. 662, 663 (1931). Later in *Bush Construction Company v. Walters*, 250 Miss. 384, 164 So. 2d 900, 902-03 (1964), the Mississippi Supreme Court held that it was proper for the trial judge to grant an instruction that if a truck was being driven at a greater rate of speed than fifty miles per hour where

the speed limit was fifty miles per hour immediately before the collision that such speed would constitute negligence. The supreme court found that there was evidence that the truck was traveling at sixty miles an hour, which would be in violation of what was then Section 8176 of the Mississippi Code of 1942. *Id.* at 903. Moreover, regardless of the lawfully established speed limit, a motorist may also be negligent if he or she operates a vehicle at "a rate of speed which was negligent under the existing circumstances." *Freeland v. Henderson*, 252 So. 2d 899, 903 (Miss. 1971).

The speed limit on Halls Ferry Road where Minor's automobile and the defendants' truck collided was forty miles per hour. Louisa Whitehead, whom the defendants called, testified that she first noticed Minor's vehicle when Minor stopped at the stop sign located at the intersection of Halls Ferry Road with the Interstate 20 off-ramp. Whitehead was driving a 1986 Mazda truck just behind Minor when he stopped at that stop sign. Whitehead then explained that because a long line of traffic in the westernmost southbound lane of Halls Ferry Road had stopped, Minor drove his automobile in the easternmost southbound lane of Halls Ferry Road. Whitehead also drove her truck behind Minor as they both traveled south down that road. Minor's and Whitehead's vehicles were the only two vehicles traveling south in that lane when the collision occurred. The defendants' counsel questioned Whitehead on direct examination about the speed at which Minor was driving his car as follows:

Q Now can you tell the ladies and gentlemen of the jury at what speed you were traveling as you were going across the bridge here?

A I got up to at least 35 that I can remember.

Q Was he traveling the same speed to your knowledge?

A No. He was going a little bit faster than I was.

Q Was he leaving you or was he staying with you?

A Leaving me.

Q How far was he in front of you at the point where you first saw the truck pulling out?

A He had to be at least 3 or 4 car lengths in front of me.

. . . .

Q Now you were going approximately 35 miles per hour. Do you know how fast [Minor] was going?

A I knew by the, you know, I mean I'm not an expert on that, but you know he was, he was, I would say 40, 45, 50.

Whitehead's foregoing testimony comprised a lay person's opinion of the speed of Minor's automobile. The general rule is that "a witness who observed the moving object in question will be permitted to estimate its speed if he possesses some knowledge or experience, however slight, which will enable him to form an opinion." *Howard v. State*, 346 So.2d 918, 919 (Miss. 1977). Minor's counsel did not object to any of the foregoing testimony.

On direct examination, Sims was asked these questions about Minor's driving immediately before the collision:

Q Did you ever see Mr. Minor slow down? Did you?

A Naw.

. . . .

Q Ever see him try to swerve out of the way?

A Naw.

Later during his direct examination, Sims expressed the following opinions about Minor's speed just prior to the collision:

Q Is it your position he was going too fast?

A Yeah.

. . . .

Q All right. Do you know whether or not he was going too fast?

A Yeah.

Minor's attorney did not object to any of the foregoing testimony in which Sims expressed his opinion that Minor was "going too fast."

Both Sims and Whitehead testified that he had stopped the concrete-mixing truck before the collision between it and Minor's Mazda occurred. The record contains the following direct examination of

Sims:

Q Tell the jury what happened after you stopped at the stop sign.

A After I stopped?

Q After you stopped.

A I sat there, I sat there about ten minutes and then a fellow becked for me to come across. Is that what you're talking about?

Q Yes, sir.

A Becked for me to come on across. The way was clear he say. You know he showed me like come on across.

Q Did you take his word for it or did you look for yourself?

A Yeah. I pulled on off in low gear and got near about to the center lane, 'bout close to the second line and I seen this red car coming and I stopped.

Louisa Whitehead testified as follows about Sims' stopping the truck before the collision between it and Minor's Mazda occurred:

Q All right. Now did you testify, Mrs. Whitehead, that the concrete truck was at a stop at the time of the actual impact?

A It came to a, I mean it stopped dead still. Uh-huh.

Q How many seconds, or minutes, or moments, or whatever passed between the time it stopped and the actual impact occurred? Do you know? How much time passed between the time the truck actually came to a stop and the impact occurred?

A It was, it wasn't, it was a few seconds, it was five seconds.

Sims' and Whitehead's testifying that Sims had stopped the truck before the collision is related to the fact that the force of the collision propelled Minor's car across the grassy median between north and south bound lanes of Halls Ferry Road into the north bound lanes where it collided a second time with another automobile which was traveling northbound. Of course the jurors as ultimate fact finders remained at liberty to determine whether Sims had stopped the truck before the collision

happened, but if the Mississippi Materials truck was motionless when the impact occurred, as both Sims and Whitehead testified, then the momentum which propelled Minor's automobile across the median and into the northbound traffic can only be attributed to the velocity of Minor's automobile.

The trial judge rejected the defendants' counsel's argument on this point because the defendants produced no physicist to establish through expert opinion the speed of Minor's automobile. For this reason the trial judge considered an inference of excessive speed from the path followed by the automobile to be speculation. However, in *Blaine v. Sullivan*, 204 So.2d 436, 438 (Miss. 1967), the Mississippi Supreme Court opined: "It was obvious from the force of impact that Harvey was traveling at a high rate of speed at the time of the accident." Thus, I opine that even in the absence of expert opinion about the speed of Minor's automobile, it fell within the jury's province to draw whatever inferences they could from the path which Minor's vehicle followed after its collision with Mississippi Materials' truck.

To summarize the evidence of Minor's speeding, I offer: (1) Whitehead's testimony that she was traveling "at approximately thirty five miles per hour" and that Minor was "leaving her" traveling at a speed of "40, 45, 50" miles per hour; (2) Sims' opinion that Minor was driving "too fast;" and (3) the testimony about the force of impact, which propelled Minor's automobile across the median and into the northbound lanes of traffic on Hall's Ferry Road, where it collided with another car traveling north. If Sims had brought the truck to a stop before the collision occurred, as both he and Whitehead testified, then the momentum was attributable exclusively to the speed of Minor's automobile. Of course, whether Sims and Whitehead were testifying truthfully was for the jury to decide.

### III. Failure to keep a proper look-out

On direct examination, Minor testified that there was no car in front of him as he drove in the easternmost southbound lane of Halls Ferry Road. He described the weather that Valentine's Day as "beautiful." On direct examination, Minor described the collision as follows:

Because by the time when I got to that intersection the cement truck came out so fast I didn't have any time to react. I looked, and by the time I looked, the cement truck was already inside the car and I said to myself, "Oh, God, I'm fixing to die." That's the first thing came into my mind. My head went to the top of the roof of the car and I was trying to fight the wheel and the next thing I know I was in the north bound traffic and this other car hit me.

Later during direct examination, Minor reiterated:

Q All right. Now when did you ever see the truck involved?

A I saw the truck just about on impact, because when I looked just that fast over there it was already there. I didn't even have time to act, to even hit the brakes to stop it, you know. When I looked that truck was already there on the inside of my automobile. It was just that fast.

On cross-examination, appellants' counsel engaged in the following cross-examination of Minor:

Q In other words, you saw it ahead of time, didn't you, sir?

A I saw the truck you understand at a standstill the way it's suppose to be. Way it was supposed to have been.

Q You saw -- the truck's pretty big?

A Sure.

Q So you could see it over the traffic and you saw the truck standing still where it was suppose to be behind the stop sign; correct?

A I don't know if it was behind the stop sign or not, but I know it wasn't out in the traffic.

Q I think you said where it was supposed to be.

A That's where it was supposed to be.

Q And you didn't see it again until you said it was right, until it hit you. Is that correct?

A Absolutely.

Q What were you doing that time, sir?

A Driving a car like everybody else.

Q And the truck just appeared in front of you. Is that correct?

A Yes, it did. It just came out of nowhere.

Later during cross-examination, counsel for Sims and Mississippi Materials questioned Minor about how far back he was when he first saw the truck stopped "where it was supposed to be." Again we quote from the record:

A You want me to answer your question?

Q Yes.

A Okay. Sir, when driving a car I'm not trying to measure the distance on where the next individual are [sic] unless I'm behind, they in front of me, or whatever. This man was supposed to have been on the side of me, which I know in the back of my mind he cannot come out and pull out in traffic. I could not tell you exactly how far. When I saw him, I just seen him, and I know he wasn't going to come out there in the middle of the traffic like that. When I saw him again he was inside my car. I cannot measure that distance.

Q You have no, you have no idea how far you were back. Is that correct?

A I couldn't tell you how far the truck was and for me to think I could tell you exactly where he was. I could tell you, you understand, I just saw him and that's all.

Q All right. Before I get off of this let me make sure. You can't tell me how far back he was when you first saw the truck where it was supposed to be?

A Sir, I tell you I could not measure no distance in there.

Q And you can't tell me, sir, how long it takes a loaded, fully loaded concrete truck in low gear to move from the south side to the center line, can you, sir?

A Sir, I don't drive a concrete truck.

Q All right. You can't tell me that then can you?

A I cannot tell you that.

In *Howard v. Young*, 450 So.2d 90, 91 (Miss. 1984), the driver of a pickup, who initially intended to execute a left turn at an intersection which he knew to be dangerous, changed his mind and returned his foot to the accelerator. That is when a collision occurred between Young's pick-up and a green Dodge Colt station wagon in the intersection. Young admitted that he never saw the other car before the collision occurred. *Id.* The Mississippi Supreme Court opined:

We are of the opinion this evidence could support a reasonable inference that Young was negligent in failing to maintain a proper lookout and that this negligence was a proximate contributing cause of the

collision.

*Id.* In the case *sub judice* Minor, unlike Young, acknowledged that he had seen Mississippi Materials' concrete-mixing truck some distance before the point of impact. However, from Minor's testimony that when he looked the truck was already on the inside of his automobile, I believe that the jury could reasonably have inferred that Minor failed to maintain a proper lookout for the advent of the truck into his lane of travel before the impact between the two vehicles. I conclude that the defendants made a prima facie case on the issue of whether Minor failed to maintain a proper look-out for Mississippi Material's truck. I would therefore hold that because the trial judge refused to instruct the jury about whether Minor's failure to maintain a proper look-out for the truck constituted contributory negligence, he erred reversibly.

## IV. Failure to yield the right-of-way

The defendants rely on Sections 63-3-801 and 63-3-805 of the Mississippi Code of 1972 to support their position on this issue.[2]

They argue that "[t]here was sufficient evidence and testimony presented at trial which indicates that Sims' concrete truck was in the intersection well before Minor's vehicle arrived at the intersection." They emphasize both Whitehead's testimony that the truck had been stopped for five seconds before the collision occurred and Sims' testimony that only the front bumper of the truck protruded about one foot into the lane in which Minor was driving his car. In *Bush Construction Company v. Walters*, 254 Miss. 266, 179 So.2d 188, 190 (1965), the Mississippi Supreme Court opined:

The evidence on behalf of Bush showed without dispute that John Miles Walters drove his automobile into said intersection without stopping at a stop sign. The evidence tended to show that Walters drove his vehicle into the intersection from a side road into the through highway when the Bush truck, traveling at a reasonable rate of speed, was so close to the intersection as to create an immediate hazard. . . . The weight of the evidence sustains the contentions of Bush, but we are of the opinion that it was a jury question whether Bush's driver was guilty of negligence proximately contributing to the collision.

*Id. See also Bunch v. Walter*, 673 F.2d 127, 129 (5th Cir. 1982) (stating that both the United States Court of Appeals for the Fifth Circuit and the Mississippi Supreme Court had held that in intersection accident cases the issue of negligence was properly a determination for the jury).

It should be noted that in *Akin v. Cowie*, 405 So.2d 903, 909 (Miss. 1981) (Bowling, J., dissenting) then Justice Bowling opined:

In other words, if the plaintiff was guilty of contributory negligence, it could not be "failing to yield the right of way." This would have been the "sole" cause and no contributory negligence would be involved.

Whether the issue of failure to yield the right of way is viewed as a matter of comparative negligence

or as a matter of sole proximate cause, I remain persuaded that the evidence in this case created a jury question about whether Mississippi Materials' truck or Minor's automobile first entered the area of the collision. For this reason alone, I would reverse and remand this case for a new trial.

## V. Plaintiff's peremptory instruction and *Vines v. Windham*

Over the appellants' vigorous objection and after he had heard argument from counsel for the litigants which filled fourteen pages of the record, the trial judge granted the following peremptory instruction:

### Instruction No. P-3

The Court instructs the jury that you should return a verdict for the Plaintiff, Lawrence Minor, against the Defendants, Eddie Sims and Mississippi Materials.

During the course of argument of whether to grant Instruction No. P-3, the trial judge inquired of the litigants' counsel:

Well what have we got, I tried to listen, but what have we got as to speed? The only way I can see the contributory negligence would come into issue is if Minor was speeding and he could have avoided the accident.

The trial judge later commented that "Whitehead testified that [Minor] was not speeding." I have previously noted that the trial judge rejected the defendants' argument that the distance which Minor's automobile traveled after its impact with the Mississippi Materials truck indicated Minor's excessive speed as "mere speculation." After he had commented, "Golly, this is close," the trial judge declared, "I am going to grant [Instruction P-3]. Based on *Vines*."

The facts in *Vines v. Windham*, 606 So. 2d 128, 129 (Miss. 1992) were so similar to the facts in the case *sub judice* that to compare these two cases is to evoke recollection of Yogi Berra's "Why, it's *deja vu* all over again." For example:

The accident occurred in Vicksburg, Mississippi, where Halls Ferry Road interchanges with Interstate Highway 20. Halls Ferry Road is a level, four-lane, divided roadway with a grassy median strip running north and south. It crosses I-20 via an overpass, its northbound lanes leading into Vicksburg. Westbound traffic on I-20 must exit to the right and ascend a ramp to Halls Ferry Road. The speed limit for Halls Ferry Road traffic is forty miles per hour.

*Id.* As had Minor in the case *sub judice*, Windham, the defendant and appellee, had been traveling West on Interstate 20 and had exited on the Halls Ferry Road exit ramp in anticipation of crossing the northbound lanes of that road and then turning left to travel south on Halls Ferry Road. *Id.* Windham had remained stopped at the stop sign located where the I-20 westbound exit ramp intersected the eastern right-of-way of Halls Ferry Road for a short period of time when Doug McMichael, the driver of the pick-up headed north in the inside, or westernmost, northbound lane of Halls Ferry

Road, who had stopped "out of regard for the traffic ahead of him backed up by the red signal light," gestured to Windham with a hand signal to come across both northbound lanes of Halls Ferry Road. *Id.* To quote from the majority opinion, "Windham proceeded and a second later, the front left side of his vehicle near his left front tire struck a vehicle driven by Hattie E. Vines, age 32." *Id.* The point of impact in *Vines* was located north of Interstate 20 on the east side of Halls Ferry Road, whereas the point of impact in the case *sub judice* was located south of Interstate 20 on the west side of Halls Ferry Road.

The jury returned verdicts of $3,500 for John Vines and $20,000 for Hattie Vines, and Windham appealed. *Id.* at 129. A majority of the Mississippi Supreme Court held that the trial judge had erred when he submitted the issue of Vines' alleged negligence to the jury and then reversed and remanded the case for a new trial. The majority opined:

The only circumstantial evidence of negligence on Hattie Vines' part is Windham's testimony that when he last looked in her direction, he did not see her car. The only way the trial court could have concluded that an issue of fact existed concerning Hattie Vines' contributory negligence was by building a tower of inferences on this slender reed of testimony.

*Id.* at 131. The majority later concluded:

The evidence is clearly insufficient to support the trial court's decision to submit the issue of contributory negligence to the jury. It goes without saying that the evidence is likewise insufficient to support the jury's verdict to the extent it found that the plaintiff was liable for contributory negligence.

*Id.* at 132. By a five-to-four vote the supreme court reversed and remanded the case. *Id.* at 134.

*Vines* is readily distinguishable from the case *sub judice*. In *Vines*, the only two witnesses of the accident to testify "on the issue of negligence [were] Windham and Vines." *Id.* No witness testified about Vines' speed when the collision between her and Windham's vehicles occurred. In the case *sub judice* Whitehead estimated Minor's speed at between forty and fifty miles per hour in a forty-mile-per-hour speed zone, and Sims opined without objection that Sims was driving too fast to avoid the accident. Additionally, there was testimony from which I believe that the jury could well have deduced that Minor was not maintaining a proper look-out immediately before his automobile and the Mississippi Materials' truck collided. In *Vines*, the majority noted that the only evidence of Vines' negligence was "Windham's testimony that when he last looked in her direction, he did not see her car." *See Vines*, 606 So. 2d at 131. To hold, as I would, that the trial judge erred when he refused the defendants' instructions on Minor's comparative negligence and granted Minor's Instruction P-3 does not conflict with *Vines*. Unlike Windham in *Vines*, the defendants offered sufficient evidence of Minor's negligence, *i. e.*, speeding and failure to maintain a proper look-out, to require the trial judge to refuse Minor's peremptory instruction and to grant their instructions on Minor's comparative negligence.

**VI. Summary**

I agree with the following quotation from *Vines*, 606 So. 2d at 131: "A trial court should submit an issue to the jury only if the evidence creates a question of fact concerning which reasonable jurors could disagree." (citations omitted). My review and analysis of the testimony and the evidence in this case compels me to the conclusion that the defendants met their burden of proof to establish that Minor operated his automobile negligently. Thus, the jurors in this case could easily disagree about the issues of Sims' and Minor's comparative negligence. Therefore, I would hold that the trial court erred: (1) when it granted Minor's peremptory instruction, Instruction P-3, (2) when it refused to submit the defendants' requested instructions which described Minor's acts that constituted contributory negligence, and (3) when it refused to submit the defendants' requested jury instruction on the form of the verdict which would allow the jury to reduce their award of damages to Minor by Minor's comparative negligence which proximately contributed to his injuries and damages. Hence, I would reverse and remand this case for a new trial.

**HERRING, HINKEBEIN AND KING, JJ., JOIN THIS OPINION.**

1. Section 11-7-15 reads as follows:

In all actions hereafter brought for personal injuries, or where such injuries have resulted in death, or for injury to property, the fact that the person injured, or the owner of the property, or person having control over the property may have been guilty of contributory negligence shall not bar a recovery, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured, or the owner of the property, or the person having control over the property.

Miss. Code Ann. §11-7-15 (1972).

2. Section 63-3-801(1) provides:

(1) Except as may otherwise be provided in this article, the driver of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has entered the intersection from a different highway.

Miss. Code Ann.§ 63-3-801(1) (1972).

Section 63-3-805 provides:

The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right-of-way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute an immediate hazard. However, said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right-of-way to the vehicle so proceeding into or across the through highway.

The driver of a vehicle shall likewise stop in obedience to a stop sign as required by this chapter at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed.

Miss. Code Ann.§ 63-3-805 (1972).